MARCH 11, 1875.          GILMAN *v.* LACONIA.

*Highway—Duty of town to adjoining land-owner.*

The owner of land adjoining a highway may maintain an action at common law against the town to recover damage caused to his land by the fault or negligence of the town in not building and maintaining the road in a reasonably suitable and proper manner.

CASE, by Hiram Gilman against the town of Laconia, for negligence in the performance of the duty of keeping a highway in repair. The alleged negligence was in allowing a highway to be out of repair by suffering a highway drain " to fill up with sand " and other materials, and thereby to become out of repair, and to be destroyed, so that the water which ought to have gone through the drain overflowed the plaintiff's land, covered it with sand, and damaged his cellar and buildings. The defendants demurred. The declaration may be referred to as part of the case.

*Barnard*, for the plaintiff.

*Whipple, Jewell & Smith*, for the defendants.

LADD, J. I think this demurrer must be overruled. The injury to a land-owner, for which compensation is made by the award of damages upon the laying out of a highway, is such as, in the judgment of the selectmen, county commissioners, or jury, as the case may be, will result to him from the construction and maintenance, in a suitable and proper manner, of a road upon the land taken for that purpose, and nothing more. Nor can there be any doubt but that the selectmen or other tribunal, in estimating such damage, must go upon the ground that in building and maintaining the road reasonable care and skill will be exercised, and a just regard be had to the rights of the owner of adjoining land, as well as the owner of land over which the highway passes. It being certain, therefore, that the land-owner receives no compensation in the original award of damages for injury which may be caused him by an improper or unsuitable construction and maintenance of the road, or by a construction and maintenance that have not a proper

regard for his rights, the question is whether he can maintain an action at common law against the town to recover such damage.

That he cannot recover against the highway surveyor or other public officer charged by law with the duty of building or repairing the road, provided such officer has acted in good faith and according to the best of his abilities, is well settled—*Waldron* v. *Berry*, 51 N. H. 136; and the statute only provides for an assessment of additional damages when, in repairing a highway by authority of the town, the grade is raised or lowered, or a ditch made at the side thereof. Gen. Stats., ch. 66, sec. 20. Unless, therefore, the common law furnishes a remedy against the town when either their act or omission in building or maintaining the road causes damage not covered by the original award, and not of a character contemplated by the statute above referred to, the land-owner is subjected to an injury which may amount to a taking of his land without compensation or redress.

It perhaps might not be difficult to show that this would bring the matter within the constitutional prohibition against the taking of private property for public uses without compensation. See *Eaton* v. *B. C. & M. R. R.*, 51 N. H. 504. But without stopping to inquire how that may be, I think the rights of the land-owner in such case stand too firmly upon the plainest principles of the common law to require the aid of this provision of the constitution in their support.

The general duty of building and keeping in repair highways is imposed by statute upon towns,—Gen. Stats., chaps. 66, 68,—and as a necessary consequence of this duty they have some special rights, amounting to a qualified property, as explained in *Troy* v. *Cheshire Railroad*, 23 N. H. 83, and *Hooksett* v. *Amoskeag Co.*, 44 N. H. 105, in the land over which they pass. Indeed, for all purposes of construction and repair, towns stand in a position which differs in no substantial respect from that of an owner of the fee; their control of the premises is so far absolute and exclusive. This, as it seems to me, obviously imposes upon them a duty towards the owner of adjoining land which, so far as regards the consequences of their acts and omissions in building and repairing, is not to be distinguished from the duty of an ordinary adjoining proprietor of land with respect to the premises of his neighbor. The purpose for which the land has been taken is to build and maintain upon it a road for the use and accommodation of the public. To build and maintain such road in a suitable and proper manner must of course always be held a reasonable use of the land, because this is the use to which it has been condemned; and no damage however great arising therefrom can give a cause of action, because all such damage must be presumed to have been included in the original award. But when it comes to the matter of an unsuitable and improper construction, or of a wanton or negligent disregard of the rights of the land-owner in maintaining the highway, I see no reason why the maxim *sic utere*, etc., should not apply. To hold otherwise would, as it seems to me, be not only gross injustice, but a palpable violation of legal principles that are quite fundamental and elementary.

I have not reached this conclusion without a careful examination of *Ball* v. *Winchester*, 32 N. H. 435. The main doctrine there laid down was, that a town is not liable for damage occasioned by the acts of a surveyor of highways, within the scope of his authority, except where such liability is imposed by statute, and he is not to be considered the agent of the town in making repairs upon highways within the town, so as to charge the town for damage occasioned by his illegal acts.

It is not necessary in the present case to inquire into the soundness of this proposition, although I must say I have never been able to comprehend the reasons upon which it rests. The burden of building and maintaining their highways is cast upon towns absolutely by the statute. In the performance of that duty they may elect surveyors if they choose, and as many as they think proper—Gen. Stats., ch. 66, sec. 5 ; or they may, if they prefer, authorize the selectmen to procure the work to be by contract. *Ib.*, sec. 25. If they adopt the former course, as is doubtless the usual practice, the duties and powers of the officers they thus create are pointed out and defined by statute, the same as are the duties of the selectmen and other officers of the town. Why are not highway surveyors officers of the town ? They are chosen by the town or appointed by the selectmen : the whole business of their office is to expend and apply the money and labor of the inhabitants of the town in and about the performance of a duty imposed in express and stringent terms upon the town, and no one else. How does the business of building and repairing a road become any less the business of the town because its oversight is placed in the hands of an officer appointed by the town, but whose duties and powers are prescribed by law ? Did the legislature intend to make the town liable in any case for the act or omission of a public officer who is not the officer, agent, or servant of the town ? If so, I can but regard the law as an anomaly of absurdity and injustice. The case of *Hardy* v. *Keene*, 52 N. H. 370, will illustrate what I mean. That case was tried before me at *nisi prius*, and I undertook to apply to the facts the doctrine of *Ball* v. *Winchester*. The derrick was erected by the highway surveyor in the forenoon. It fell, injuring the plaintiff, about four o'clock in the afternoon of the same day, by reason (as was claimed) of the negligence of the surveyor in securing its fastenings.

But, according to *Ball* v. *Winchester*, the surveyor was not the agent of the town, and the town was not liable for his act in thus rendering the highway insufficient and dangerous. The town, upon the authority of a series of well considered decisions in this state, could only be held liable in case the injury was caused by a defect which they ought to have discovered and remedied before the accident.

The court, by a decision in which I did not participate, but with which, upon this point, I fully agree, held that the surveyor was to be regarded as the agent of the town for the purpose of notice of the insufficiency of his own act in securing the derrick. The facts stated in the case show that upon no other ground could the town have been held liable,

as they afterwards were, for the insufficiency of the fastening, for the fastening was of such a character that it could only be known to those who did the work, and the fact was only *proved* by the disastrous event.

It is not easy to see upon what ground it can be held that the town is not liable for the negligence and illegal acts of the surveyor in the discharge of his legal duty, and at the same time, that notice to that officer of the character of those acts or omissions is notice to the town, sufficient to lay the foundation for a recovery against the town on the ground of fault in not remedying the defect resulting from such acts or omissions of the surveyor. The substance of the thing certainly seems to me too plain to be concealed, namely, that the town is held liable directly for the fault of the surveyor; and if that is so, it must be on the ground that the surveyor is the officer, agent, or servant of the town.

But, as already remarked, this question does not arise in the present case. There are, however, some observations of the learned judge who delivered the opinion of the court in *Ball* v. *Winchester*, with which my conclusions in the present case are not consistent. He says (p. 443), "Assuming that the town may be held to answer for special damage resulting from their neglect of duty, at the suit of the party injured, what is the duty which, according to the allegations of the first and third counts, the defendants have been guilty of neglecting? It is there alleged that they suffered and permitted the channel of the stream running along by the highway, and the culvert by which it was conducted across to the river, to become filled and choked up, so that the water was thereby turned upon the plaintiff's premises. This contains no averment of a breach of duty. It does not amount to an allegation that the town suffered the highway to become insufficient and out of repair. Indeed, all may be true, as alleged in these counts, and yet the highway be in proper condition and repair for the purposes of travel upon it. But considering it, as it has been considered in the argument, as equivalent to an allegation that it was insufficient and out of repair, still it is the duty of towns to keep their highways in suitable repair only for the travel passing thereon, and it is only to the traveller, as such, that the duty can be said to be owing."

It would be with greater diffidence that I should venture to express my dissent from the views which I understand these remarks to embody, had not the same court, composed of the same judges, given a decision three years afterwards, which, if I apprehend it rightly, is entirely the other way. I refer to the case of *Groton* v. *Haynes*, 36 N. H. 388. That was an action on the case by the town of Groton against the defendant for digging a ditch across a highway which the town was bound to keep in repair. It was shown by the evidence that the highway in question was laid out by the selectmen of the town in 1841; that forty years or more before the act complained of, the person under whom the defendant claimed opened a ditch, extending from his dwelling-house across the place where the highway now is to a brook, for the purpose of conveying water from the brook to his

house and barn, and that the water had from that time to the present generally run in this ditch; that when the highway was first built, a culvert was put in to provide a passage for the water. In 1855, this culvert having got out of repair so that the water did not run through it, the defendant called on the highway surveyor to clear it out, etc., which he refused to do. Thereupon the defendant cleared it out himself, and turned the water from the brook into the ditch, and thus conveyed it to his house, for his own use, leaving the culvert open.

It was contended by the plaintiffs that the defendant had no right to a passage for his water-course, or, in other words, that the town had a right to stop the water-course, discontinue the culvert, and make a solid road-bed across the channel. This was denied by the court. The doctrine of the case is thus stated in the head note: If the owner of land over which a highway is laid out have on the land an artificial watercourse, used to convey water to his house, the road ought to be constructed and maintained with a culvert or other suitable passage for the watercourse, unless the difficulty and expense of providing such a passage would exceed the damage of stopping the watercourse, and make it unreasonable to require the road to be so constructed and maintained. In delivering the opinion of the court, PERLEY, C. J., says (p. 394), The defendant, then, had a right to a suitable culvert to convey the water in this watercourse across the road, and it was the duty of the town to provide and maintain it for him; and when the culvert was filled up and stopped, by neglect of that duty, it was a nuisance, which caused the defendant a private and individual damage; and, on general principles, he had a right to remove it himself, in a proper manner, doing no unnecessary damage.

It is manifest that this case can be sustained upon no other ground than that the town owe a duty to the land-owner as well as to the traveller and the public. Of course, it cannot be pretended that an act or omission in building or maintaining a road might constitute a private nuisance which the person aggrieved would have a right to enter and abate, and at the same time that he could have no action to recover the damages occasioned him thereby. If, therefore, the decision in *Ball* v. *Winchester* rests at all on the proposition that the towns owe no duties in respect of their highways except to the traveller as such, I think the case is so far clearly overruled by *Groton* v. *Haines,* and cannot be regarded as the law.

The doctrine of this opinion is thoroughly established in Massachusetts—*Perry* v. *Worcester*, 6 Gray 544; *Parker* v. *Lowell*, 11 Gray 353; *Sprague* v. *Worcester*, 13 Gray 193; *Emery* v. *Lowell*, 104 Mass. 13;—also in Vermont, in *Haynes* v. *Burlington,* 38 Vt. 350, where may be found a very clear and forcible opinion by POLAND, C. J.;—see, also, *New York* v. *Furze*, 3 Hill. 612; *Stone* v. *Augusta*, 46 Me. 127. An extremely elaborate and satisfactory discussion of the English cases by BLACKBURN, J., may be found in *The Mersey Docks Trustees* v. *Gibbs*, Law Rep., 1 H. L. 93;—see, also, a very full and careful examination of many cases bearing more or less directly on the subject, by SMITH, J., in *Eaton* v. *B. C. & M. R. R.,* 51 N. H. 504.

The rule to be observed in the assessment of damages is quite another matter, and is not before us. But the fact that great care and circumspection will be necessary to discriminate between such damage as must be held to have been compensated by the original award, and such as forms the legal basis of a recovery in a suit like this, makes no difference with the legal principle to be applied in deciding upon the demurrer.

CUSHING, C. J.    The subject of the duties and liabilities of municipal corporations, as applied to towns in this state, was discussed in *Ball* v. *Winchester*, 32 N. H. 435, *Eastman* v. *Meredith*, 36 N. H. 284, and *Groton* v. *Haines*, 36 N. H. 388.

In *Ball* v. *Winchester*, the complaint was that a highway surveyor had raised an embankment for the purpose of turning the water into a culvert which he had placed across the highway; that, the culvert being too small, the water ran over the embankment so that it ran down, united with other water, and ran further down to an older culvert which the town had permitted to become stopped up, and there, for want of a sufficient culvert, had flowed back and flooded the plaintiff's warehouse.

Here were in point of fact two causes of the injury,—an embankment and insufficient culvert, alleged to have been improperly erected by the surveyor, and another culvert permitted to become stopped by the negligence of the town.

These two causes of action were described in the declaration, that of the embankment being described in the second count, and the obstructed culvert in the first and third counts, and the allegation in each count was for permitting the highway to become defective and out of repair.    The court held that the plaintiff could not recover on either of his counts, in order to which, as I understand it, it was necessary to hold not only that the town could not be made liable for the negligence of the surveyor, but, also, in regard to its keeping its highways in repair, the town owed no duty excepting that imposed upon it by statute in favor of those persons who had occasion to use the highway ; and it was held that the plaintiff could not recover.    The doctrine was broadly stated that ordinarily a town owed no duties except those imposed upon it by statute.

It should be noticed that in this case the cause of action stated was negligence in suffering the highway to be out of repair, and not the erecting and maintaining a nuisance.

In *Eastman* v. *Meredith* the same general doctrine was maintained, and the plaintiff there failed in his action, it being held by the court that even admitting the public duty of the town to furnish a town-hall for the holding of town-meetings, still, the statute had imposed no duty in regard to private individuals which could be the subject-matter of an action.

In the course of his opinion, however, the learned chief justice alluded to and perhaps recognized a class of cases in which municipal

corporations, by reason of their ownership of property from which they derived a profit, or of being allowed some privilege, assumed or were subjected to certain liabilities in regard to private persons.

He also alluded to another class of cases in which a municipal corporation might perform its recognized duties in such way as either by negligence or otherwise to invade the rights of individuals, and so become liable to an action at common law. In the course of his opinion, he says,—"In several of the cases cited for the plaintiff, cities and towns have been held liable for private injuries done by them in the course of executing works which they were by law authorized to perform. In *Scott* v. *The Mayor and Aldermen of Manchester*, 37 Law and Eq. 495, by the carelessness of workmen whom the defendants employed in laying gas-pipes, a piece of metal was thrown into the plaintiff's eye, and the city was held to be liable. So, in *Delmonico* v. *The Mayor, etc., of New York*, 1 Sanford 222, an action was maintained for damage suffered by the plaintiff from the negligence of the defendants in the process of constructing a sewer. The remarks of the court in *Anthony* v. *Adams*, 1 Met. 285, are to the point, that an action may be maintained against a town in such a case."

And further on he says,—" So if a town or city maintain an erection or structure which is a private nuisance, and causes a special damage, or, in the performance of an authorized act, invade any right of property, the corporation has been held liable to a civil action. *Thayer* v. *Boston*, 19 Pick. 511; *Akron* v. *McComb*, 18 Ohio 229; *Rhodes* v. *Cleveland*, 10 Ohio 159. If the defendants in the present case had laid and maintained the foundations of their town-house across a stream, and caused the water to flow back on the plaintiff's land, according to these authorities, they would have been liable to an action for the damage."

I do not understand that the learned chief justice intimates any disapprobation of this doctrine.

In the case of *Groton* v. *Haines*, 36 N. H. 388, the same court, the same learned judge delivering the opinion, held that a town has no right, in the execution of its duty in building and maintaining a highway, unnecessarily to obstruct a watercourse, to the damage of riparian owners. He says in the course of his opinion,—" The defendant, then, had a right to a suitable culvert to convey the water in this watercourse across the road, and it was the duty of the town, or the officers of the town, to provide and maintain it for him; and when the culvert was filled up and stopped by neglect of that duty, it was a nuisance, which caused the plaintiff a private and individual damage, and, on general principles, he had a right to remove it himself, in a proper manner, doing no unnecessary damage. No complaint is made that he proceeded without due notice. He called on the surveyor to do his duty, which he neglected."

The cause of action, therefore, which is the subject of complaint in the plaintiff's writ, is, according to this authority, a nuisance, which the plaintiff might lawfully abate, and for which, according to the

authorities cited by PERLEY, C. J., in *Eastman* v. *Meredith*, and apparently with approbation, an action at common law may be maintained.

The action, however, would technically be *case* for erecting and maintaining a nuisance, and not an action for negligence in suffering a highway to be defective.

Considered in this point of view, the judgment in *Ball* v. *Winchester* was perhaps technically correct, the action not being case for maintaining a nuisance, but case for negligently permitting the highway to be defective and out of repair, although the broad doctrine laid down in that case seems hardly consistent with the case of *Groton* v. *Haines*. I am therefore of opinion, that, both on sound principle and the doctrine of *Eastman* v. *Meredith* and *Groton* v. *Haines*, and cases cited, this action may be maintained, although it may be technically necessary for the plaintiff to amend his declaration.

SMITH, J.   In *Wheeler* v. *Troy*, 20 N. H. 77, it was held that towns, for neglect to keep in repair the highways within their limits, are liable at common law and independently of the statute giving an action to the party injured.   But in *Eastman* v. *Meredith*, 36 N. H. 300, the correctness of the decision in *Wheeler* v. *Troy* was questioned, and the court expressed themselves as feeling at liberty to reverse it, but were not called upon at that time to do so.   The doctrine of *Farnum* v. *Concord*, 2 N. H. 392, however, was reaffirmed, where it was held that no action lies at common law against a town for damages sustained through defects in highways.

In *Ball* v. *Winchester*, 32 N. H. 442, occurs the following language : " The position is taken that the damages sustained by the plaintiff have resulted from the neglect of the town to perform a duty imposed upon them by law, and that for damage happening in consequence of such neglect of duty, the suffering party may have his remedy against the town independent of any statute provision to that effect.   We are not prepared to say that there exists any sound reason for distinguishing, in the application of that principle, between the case of a town or other corporation aggregate, occasioning special damage by the neglect of a duty expressly imposed upon them, if the duty be of such a character that it may properly be considered as one owing to the party suffering from the neglect, and that of an individual occasioning such damage by a like neglect."

The principle upon which *Groton* v. *Haines*, 36 N. H. 388, was decided, is consistent with the suggestion raised in the above quotation from *Ball* v. *Winchester*.

In the later case, of *Eaton* v. *B. C. & M. R. R.*, 51 N. H. 504, is an able and exhaustive opinion by JEREMIAH SMITH, J., upon the subject of damages caused by municipal and other public corporations to the property of another, where it is said " that the decisions, which go to the length of exempting municipalities from liability for the infliction of injury upon the land of another, are erroneous in principle.   If in the repair of highways there is a physical interference with land outside

the limits of the highway, a substantial taking away of the soil of the adjacent owner, or an imposition of foreign substances upon it, so as to amount to a substantial abridgement of his right of exclusive user, the mere fact that the injury is done by a town or city ought not to deprive the land-owner of all redress.   The opposite view ' places individual property   *   *   at the mercy of municipal power.'   ' We can solve more easily and safely questions of this character if we take pains to free our minds from the false notion that a municipality has some indefinable element of sovereign power, which takes from the property of the citizen, as against its aggressions, the protection enjoyed against the aggressions of a natural person.'   The same constitutional provision that protects the right of private property against invasion by private individuals, ' must protect it from similar aggression on the part of municipal corporations.' "

To the same effect are the later decisions in Massachusetts,—see *Perry* v. *Worcester*, 6 Gray 544,—where it was held that " where damage is necessarily done to the property of an individual by taking his land for a highway when authorized by public authority for public use, all damage necessarily incident to such work is regarded as contemplated when the land is so appropriated, and no action therefor will lie. Such works are legally regarded as warranted by the public in the exercise of eminent domain, and are not unlawful.   But," said SHAW, C. J., " this presupposes that the public work thus authorized will be executed in a reasonable, proper, and skilful manner, with a just regard to the rights of private owners of estates.   If done otherwise, the damage is not necessarily incident to the accomplishment of the public object, but to the improper and unskilful manner of doing it.   Such damage to private property is not warranted by the authority under color of which it is done, and is not justifiable under it.   It is unlawful and a wrong, for the redress of which an action of tort will lie ; "—see, also, *Sprague* v. *Worcester*, 13 Gray 193, and *Merrifield* v. *Worcester*, 110 Mass. 216, and authorities cited.

However this principle may be regarded as having been settled in the earlier cases in this state and in Massachusetts, by the later decisions in the latter state a municipal corporation is held liable to the person suffering damage, whether from the improper construction or the improper state of repairs of its highways, not using them as such ; while the cases of *Wheeler* v. *Troy*, *Groton* v. *Haines*, and *Eaton* v. *Railroad*, in our own state, recognize the same doctrine.   In *Wheeler* v. *Troy*, Judge GILCHRIST remarks as follows : " These facts are adverted to as having a tendency to show that by immemorial custom, and independently of any statute that has been preserved, the towns in this state have been held liable to keep in repair the highways within their limits, and that for neglect of that duty common-law remedies, both of a public and a private character, have existed, and those of a public character, at least, put in force from a very early period.   *   *   We are inclined, therefore, to the opinion that the general maxim of the common law, that he who is specially damaged by the breach of a duty on the

part of another shall have his remedy by action, is properly applicable to the case of one who has received an injury through the neglect of a town to repair its roads."

Whether this action can be maintained depends upon the question whether the defendants' care and management of the highway was reasonable and proper under the circumstances.

*Demurrer overruled.*